UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

CIVIL ACTION NO. 13-197-WOB-CJS

EMMA JEANETTE COMBS                                                    PLAINTIFF

v.                          **REPORT AND RECOMMENDATION**

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY                          DEFENDANT

* * * * * * * * *

Plaintiff Emma Jeanette Combs brings this action under 42 U.S.C. § 405(g), challenging Defendant Commissioner's final decision denying her application for disability insurance benefits and supplemental security income benefits under the Social Security Act.  At issue is whether the Administrative Law Judge (ALJ) erred in finding Plaintiff "not disabled" and therefore not entitled to benefits.  As explained below, the ALJ erred in his consideration of the evidence relating to Plaintiff's mental impairments.  It will therefore be **recommended** that the Commissioner's Motion for Summary Judgment (R. 16) be **denied,** Plaintiff's Motion for Summary Judgment (R. 15) be **granted in part,** and the matter be **remanded** for further proceedings.

I.      **STANDARD OF REVIEW AND THE ADMINISTRATIVE PROCESS**

In reviewing the decision of an ALJ in social security cases, the only issues before the reviewing court are whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009).  The findings of the Commissioner are not

subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Blakley*, 581 F.3d at 406. "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Id*. (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Thus, even if the evidence could also support another conclusion, the decision of an ALJ must stand if the evidence could reasonably support the conclusion reached. *Id*. (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

In this case, Plaintiff must establish that she is disabled within the meaning of the Social Security Act in order to qualify for benefits. 42 U.S.C. § 423(a)(1). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Act requires the Commissioner to follow a five-step process when making a determination on a claim of disability. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (*citing Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). First, a claimant must demonstrate that she is not currently engaged in "substantial gainful activity." *Vance*, 260 F. App'x at 803 (*citing* 20 C.F.R. §§ 404.1520(b), 416.920(b)). Second, if the claimant is not engaged in substantial gainful activity, she must demonstrate that she suffers from a severe impairment. *Id*. at 803-04. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'" *Id*. at 804 (*citing* 20 C.F.R. §§ 404.1520(c), 416.920(c)). Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least

2

twelve months, and the impairment meets or equals a listed impairment located at 20 C.F.R. pt. 404, subpt. P, app. 1, then the claimant is presumed disabled regardless of age, education or work experience. *Id.* (*citing* 20 C.F.R. §§ 404.1520(d), 416.920(d)). Fourth, the claimant is not disabled if her impairment(s) does not prevent her from doing her past relevant work. *Id.* Lastly, even if the claimant cannot perform her past relevant work, she is not disabled if she can perform other work which exists in the national economy. *Id.* (*citing Abbott*, 905 F.2d at 923). Throughout this process, the claimant carries the overall burden of establishing that she is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy. *Id.* (*quoting Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Combs was 49 years of age at the time of the ALJ's decision and age 47 at the alleged disability onset date. (Administrative Record (A.R.) 22). Plaintiff has a high school education (A.R. 22) and has past relevant employment as a kitchen helper, according to the job description offered by the vocational expert who testified at hearing (A.R. 22, 650). Plaintiff initially alleged disability due to pain in her right neck, shoulder, arm and down into her fingers (A.R. 159). Plaintiff then alleged that her conditions had become more severe and that she had degenerative disc disease (A.R. 123-24, 145-46).

Plaintiff filed an application for disability insurance benefits and supplemental security income on September 8, 2011, alleging disability beginning on May 16, 2011. (A.R. 110-16, 218-31). The claims were initially denied on December 14, 2011 (A.R. 38, 217), and again on February 10, 2012, upon reconsideration (A.R. 25, 206). Plaintiff requested a hearing which was held before Administrative Law Judge (ALJ) Christopher Van Dyck on September 18, 2012. (*Id.*

3

at 626-56).  During this hearing, the ALJ heard testimony from Plaintiff and vocational expert Julian
Nadolsky.  (*Id.*).  After receiving testimony and reviewing the record, the ALJ issued a written
decision on November 6, 2012, finding Plaintiff was not disabled.  (A.R. 14-24).

The ALJ used the five-step sequential process to determine that Plaintiff was not disabled.
(*Id.*).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity
since May 16, 2011, the alleged onset date. (A.R. 16).  At step two, the ALJ determined that Plaintiff
had the following severe impairments: degenerative disc disease of the cervical and lumbar spine,
and sprains/strains.  (*Id.*).  The decision reflects that at step three, the ALJ "reviewed all of the
claimant's impairments" and found Plaintiff did not have an impairment or combination of
impairments that meets or medically equals the severity of one of the listed impairments under the
applicable Federal Regulations.  (A.R. 20).

At step four, the ALJ considered the evidence and determined that the Plaintiff had the
residual functional capacity (RFC) to perform a range of light work as defined in 20 C.F.R. §§
404.1567(b) and 416.967(b), subject to certain limitations.  (A.R. 20).  Specifically, the ALJ found
that Plaintiff has the functional capacity to:

> perform a range of light work that does not require lifting more than 10 pounds
> occasionally.  She can sit six hours in an 8-hour day, stand six hours in an 8-hour day,
> and walk six hours in an 8-hour day.

(*Id.*).  The ALJ heard testimony from an impartial VE who stated that based on the RFC provided
by the ALJ, Plaintiff could not perform any of her past relevant work.  (A.R. 22, 652).  The ALJ
proceeded to step five and adopted the VE's opinion that given an individual of Plaintiff's age,
education, work experience and RFC as recited above, there are jobs that exist in significant numbers
in the national economy that could be performed, including representative occupations such as

4

factory jobs of inspector and (re)pairer of gloves/hosiery, label cutter, lock assembler, (dowel)dome

inspector, and cuff folder. (A.R. 23, 652-53).  The ALJ ultimately determined that Plaintiff was not

"disabled" for Social Security purposes. (A.R. 24).

Plaintiff appealed the ALJ's decision to the Appeals Council. (A.R. 9, 10). On September 17,

2013, the Appeals Council denied Plaintiff's request for review (A.R. 5-8), rendering the ALJ's

November 6, 2012, decision denying Plaintiff benefits the final decision of the Commissioner.  (*Id*.).

On October 10, 2013, having duly exhausted her administrative remedies, Plaintiff timely filed a

Complaint asserting that the ALJ erred as a matter of law in failing to find Plaintiff disabled. (R. 1).

Plaintiff and the Commissioner have filed Motions for Summary Judgment (R. 15, 16), which are

pending for the Court's consideration.

## III.    ANALYSIS

Plaintiff advances three arguments on appeal.  One, Plaintiff contends that the ALJ failed to

properly evaluate her subjective complaints relating to her back problems.  Two, Plaintiff argues that

the ALJ erred in considering her mental impairments.  And three, Plaintiff asserts generally that the

ALJ's determination is not based on substantial evidence.

### 1.    The ALJ did not err in his consideration of Plaintiff's credibility based upon subjective complaints relating to her back pain.

Although relevant to the RFC assessment, a claimant's description of his or her symptoms

is not enough, on its own, to establish the existence of physical impairments or disability.  Soc. Sec.

Rul. 96-7p, 1996 WL 374186, at *2 (July 2, 1996); Soc. Sec. Rul. 96-4p, 1996 WL 374187, at *2

(July 2, 1996).  When evaluating a claimant's symptoms, the ALJ must determine whether there is

an underlying medically determinable impairment that could reasonably be expected to produce the

alleged symptoms. *Id.* Once that is established, the ALJ must "evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2.

When the claimant's description of her symptoms is not supported by objective medical evidence, the ALJ must assess the credibility of the claimant's statements based on the entire case record, including medical and laboratory findings, claimant's statements, information provided by treating or examining physicians about how the symptoms affect the claimant, and any other relevant evidence. *Id.* The ALJ may also consider the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives for pain relief; any other measures used for pain management; and any other factors concerning the claimant's limitations due to symptoms. *Id.* at *3. Credibility determinations based solely on intangible or intuitive notion are impermissible. *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 247 (6th Cir. 2007).

Plaintiff argues the ALJ unfairly assessed her credibility as to her back pain complaints when he concluded that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are unsupported and inconsistent with the medical evidence of record." (R. 15-1, at 17, A.R. 20-21). Plaintiff further argues the ALJ improperly discredited her pain complaints on the basis that all of her treatment has been conservative in nature without referral for surgery or other aggressive measures. (*Id.*). In addition,

6

she complains the ALJ's view of her testimony, specifically that she is able to do her daily activities but does them more slowly, is a mischaracterization of her testimony.  (*Id.*).

Despite Plaintiff's arguments, the record reveals the ALJ properly engaged in the two-part test for evaluating her symptoms of back pain.  First, he found that Plaintiff had physical medically determinable impairments that could reasonably be expected to cause some of her alleged symptoms. (A.R. 20).  He then proceeded to compare Plaintiff's testimony about the severity and persistence of her symptoms against the objective medical proof, ultimately finding that the two were inconsistent. (A.R. 21).

Plaintiff does not specifically challenge the functional restrictions found by the ALJ based on her physical condition, focusing instead upon the procedural issue of whether the ALJ provided a sufficient rationale for discounting her credibility.  The record reveals that the ALJ explained in some detail the inconsistencies between Plaintiff's testimony and the objective medical evidence relating to her back problems.   The ALJ noted that her back and neck treatment had been conservative and her examinations relatively unremarkable.  He noted and discussed that Dr. Kirpal Sidhu, Plaintiff's treating orthopedic surgeon, found no gross neurological deficit, but some tenderness and reduced range of motion of the cervical spine (A.R. 17, 21, 495); that Dr. Kirpal noted  her cervical MRI showed mild disc bulges but no gross herniation or impinging on the spinal cord and further noted her nerve conduction study did not show any abnormality. (A.R. 17, 21, 493). Ultimately, Dr. Sidhu continued Plaintiff on conservative treatment, and he opined that Plaintiff could sit, stand, walk and lift and carry about 20 pounds and manipulate objects. (A.R. 468).  The ALJ gave Dr. Sidhu's opinion significant weight, and noted that Plaintiff's complaints about her inability to use her hands and fingers, and her testimony about her daily functional limitations due

to her back and neck pain were not consistent with the opinions of her treating doctor Sidhu and the objective evidence as a whole. (A.R. 17, 21-22).

The ALJ also reviewed and considered the records of Dr. Robert Hoskins and examination report of Dr. Andrew Koerber and how their objective findings were not consistent with Plaintiff's pain complaints. (A.R. 17-18, 21). Dr. Hoskins examined Plaintiff for purposes of her workers' compensation claim. (A.R. 470-78). He noted that she had experienced a gradual onset of back and neck problems and pain after years of working at her job as a kitchen helper. (A.R. 470).[1] His exam showed some muscle guarding and right shoulder discomfort and strength reduction (A.R. 472-73), but the ALJ noted that Dr. Hoskins' opinions as to Plaintiff's work functional abilities and restrictions, in particular that she could lift up to 30 pounds, were not inconsistent with the ALJ's conclusion that she could perform a reduced range of light work. (A.R. 17-18, 21, 475). The ALJ noted that while Plaintiff could no longer perform her past work as a kitchen helper due to a gradual decline in her physical abilities, she could perform less demanding jobs, which is consistent with Dr. Hoskins' findings, to which the ALJ gave significant weight, and the ALJ's own RFC finding. (A.R. 21).

The ALJ also discussed the clinical observations of consultative examiner Dr. Koerber (A.R. 18, 485-88), noting that the opinions offered by Dr. Koerber were consistent with the limitations he observed on Plaintiff's physical exam and also consistent with the overall objective medical evidence

---

[1]In her brief, Plaintiff states that in October 2009 she was involved in a motor vehicle accident and then developed neck problems after hitting her head on a window. (R. 15-1, at 13). This appears to be a mistake in the briefing, as the record reflects the accident to which Plaintiff refers happened in October 2000, not 2009 (A.R. 313-16). The record otherwise reflects gradual onset of physical problems and not acute traumatic injury (A.R. 17), such as noted in Dr. Hoskins' report (A.R. 470), Dr. Sidhu's records (A.R. 495), and Plaintiff's hearing testimony (A.R. 645).

of record. (A.R. 18, 21).  Dr. Koerber opined Plaintiff could sit, stand, move about, lift and carry objects lighter than 30 pounds, and hear and understand normal conversational speech. (A.R. 488). Although the ALJ ultimately gave significant weight to Dr. Koerber's and the other opinions noted above (A.R. 21), the ALJ also concluded that a 10 pound lifting restriction was what was actually warranted "based on the claimant's partially credible testimony regarding her neck and back pain, coupled with some of the medical treatment notes from her service providers" (A.R. 21).  Thus, that the ALJ did a detailed comparison of Plaintiff's pain complaints and functional abilities, as stated and testified to by her, with the medical treatment, testing, and opinion evidence in the record is evidenced within his written decision.  The ALJ's consideration of this issue and his decision are within the guidelines established by the Social Security Ruling 96-7p.

As to Plaintiff's arguments that the ALJ erred in noting all of her treatment has been conservative in nature, and in noting that she said she is able to do her daily activities but more slowly, the Commissioner's briefing points out the proper context in which these statements should be viewed.  Specifically, the Commissioner points out that while Plaintiff's diagnosis of osteoarthritis may not be treatable with surgery, Plaintiff has other conditions such as degenerative disc disease that could be treated by surgery but none has been recommended according to the medical proof.  Dr. Hoskins diagnosed Plaintiff with only mild degenerative disc disease, and orthopedic surgery Dr. Sidhu recommended conservative treatment with medication, not surgery. (R. 16, at 11; A.R. 473-74, 504).  As for the ALJ's statement that Plaintiff could perform her daily activities, just more slowly, the Commissioner explains that this reference by the ALJ was in the context of a disability report completed by Plaintiff where she remarked that she could care for her personal needs but was more limited and slower.  (*Id.*; A.R. 21, 126).

9

Upon review of the record on this issue of the ALJ's assessment of Plaintiff's credibility, the ALJ did not err in concluding that Plaintiff's symptoms of back pain were inconsistent with the objective medical evidence.  The ALJ explained his reasons for making an adverse credibility assessment.  After making his determinations about Plaintiff's credibility, the ALJ incorporated the limitations he found to be justified in assigning a RFC for a limited range of light work.  There is no error in this regard.

**2.     The ALJ erred in his consideration of Plaintiff's mental impairments, necessitating remand.**

In his decision, the ALJ notes that Plaintiff has medically determinable mental impairments of depression and anxiety. (A.R. 19).  However, the ALJ also notes that these mental impairments are neither severe for step two "severe impairment" purposes (*id.*), nor is a mental RFC warranted at step four of the sequential assessment process (*id.* at 22).  On appeal, Plaintiff argues that her mental impairments do affect her ability to perform basic work activities and, when considered in combination with her physical impairments, render her unable to work. (R. 15-1, at 13).

At step two of the five-step disability analysis, the ALJ must determine whether the individual has a "severe medically determinable physical or mental impairment" or "combination of impairments that is severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  Basic mental work activities include understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting.  *See* 20 C.F.R. §§ 404.1521(b)(3)-(6), 416.921(b)(3)-(6).  The severity inquiry

10

has been "construed as a *de minimus* hurdle in the disability determination process." *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988).

In this case, the ALJ found that Plaintiff's degenerative disc disease of her cervical and lumbar spine and her sprains/strains were her only severe impairments (A.R. 16) and that her medically determinable mental impairments of depression and anxiety were not severe (A.R. 19). In concluding that her mental impairments due to depression and nerves/anxiety were nonsevere, the ALJ pointed out that Plaintiff did not raise these issues until her appeal for reconsideration and was not receiving any treatment for her nerves or depression until May 2012. (A.R. 18).[2]  He notes Plaintiff had been given Elavil prior to May 2012, but this was by a non-psychiatric treating physician, neurologist C. Krishnaswamy, in treating her for chronic pain, not a mental impairment per se. (A.R. 18, 519).  The ALJ also points out that "[s]tate agency mental health experts" reviewed the record and determined Plaintiff "did not have a medically determinable mental impairment." (A.R. 18).  In support of this statement the ALJ's refers to Zenas English who, as pointed out by the Commissioner (*see* R. 16, at 5 n.5), does not appear to be a licensed psychologist (A.R. 18, 31).  The other reference by the ALJ is to clinical psychologist Edward Stodola, who on February 2, 2012, noted Plaintiff had been prescribed Elavil for treatment of chronic pain, but had no specific treatment for any mental impairment. (A.R. 18, 32).

The ALJ goes on to discuss the mental health treatment that Plaintiff eventually sought.  On May 1, 2012, she went to Cumberland Comprehensive Care Center for treatment of depression.

---

[2] In his decision, the ALJ describes Plaintiff as "alleg[ing] disability due to neck, shoulder, and arm pain that radiates down into the fingers, and back pain that radiates down the right side into right foot." (A.R. 16).  This description does not include Plaintiff's assertions that her depression and nerves, which the ALJ found to be medically determinable mental impairments, also contribute to rendering her disabled.

(A.R. 555-59). Upon presenting with depressed mood, feelings of worthlessness, irritability, sleep disturbance, inconsistent appetite, isolation, withdrawal, no income, and fatigue, the therapist recommended Plaintiff for psychiatric referral and an individual session monthly. (A.R. 560). On subsequent Cumberland Comprehensive Care Center visit on May 8, 2012, Plaintiff was diagnosed with "mood disorder, not otherwise specified" and a global assessment of function (GAF) score of 60 was noted. (A.R. 551-53).[3] She returned to the Care Center for treatment on May 15, 2012 (A.R. 549-50), and on June 5, 2012 (A.R. 547-48).

Plaintiff also saw psychiatrist Dr. Syad Raza in June 2012 for treatment of her complaints with her nerves, depression, difficulty sleeping, problems with concentration, and lack of energy. (A.R. 537, 638-39). Dr. Raza's diagnostic impression was that of "mood disorder due to [general] medical condition" and a GAF assessment of 65 (A.R. 537-46), which the DSM-IV categorizes as mild to moderate symptoms. At that time she was prescribed Celexa. (A.R. 546). Plaintiff also testified that Dr. Raza prescribed Tradozone to help with sleeping and the medication does somewhat help. (A.R. 638). Plaintiff returned to Dr. Raza in July 2012, reporting the medications seemed to be helping and she had "a little more giddiup and go" and was feeling better because she was getting more sleep and had more energy (A.R. 533-36), though Plaintiff also testified that Dr. Raza had to increase her dosage of Celexa and the problem is not resolved (A.R. 640).

On August 11, 2012, Plaintiff was examined by licensed psychologist Robert Spangler and Plaintiff submitted his report in support of her claim. (A.R. 562-69). Dr. Spangler diagnosed Plaintiff with "Major Depressive Disorder, recurrent, mild to moderate on Rx [medication],

---

[3]According to the American Psychiatric Association's *Diagnostic & Statistical Manual of Mental Disorders* (4th ed. 2000) (DSM-IV), which was the edition in place at the time of Plaintiff's treatment and the ALJ's decision, a GAF score of 60 represents moderate symptoms. *See* DSM-IV at 33-34.

secondary to medical conditions" and with "Generalized Anxiety Disorder, moderate (not medicated)." (A.R. 566). He assessed a GAF of 55 (*id.*), which the DSM-IV categorizes as moderate to serious symptoms. Dr. Spangler on August 13, 2012, completed a Medical Assessment of Ability to do Work-Related Activities (Mental). (A.R. 567-69). He opined that Plaintiff has a "good" ability, which the Assessment Form defines as limited but satisfactory, to follow simple work rules, interact with supervisors, function independently on good days, and maintain attention/concentration if on her medication. (A.R. 567). He further opined, however, that Plaintiff has only a "fair" ability, defined as seriously limited resulting in unsatisfactory work performance, to relate to coworkers, deal with public, use judgment of public, deal with work stress, and function independently on bad days. (*Id.*). He concluded she has "good" ability to understand, remember and carry out simple job instructions, only a "fair" ability to understand, remember and carry out detailed but not complex job instructions, and no ability to understand, remember and carry out complex job instructions. (A.R. 568). He rated her ability to maintain personal appearance as "good" on her good days but only "fair" on her bad days, and rated her ability to behave in an emotionally stable manner and relate predictably in social situations as "fair." (*Id.*). Finally, he rated her ability to demonstrate reliability as "poor" and opined that she would be absent from work more than three days per month due to her mental impairments. (A.R. 568-69).

The ALJ, in conducting his review of this evidence at the step two level, concluded that

the record as a whole shows the claimant's mental impairments were not aggressively treated initially and then once she got treatment she started to improve with therapy/medications, ergo no work restrictions are warranted. Based on review of the evidence, the undersigned finds that her functional limitations are attributed to physical conditions and that Ms. Combs does not have a 'severe' mental impairment. As demonstrated by the medical evidence, the claimant's medically determinable mental impairments of depression and anxiety, considered singly and in combination,

13

do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe (Social Security Ruling 96-3p).

(A.R. 18-19).

The failure to find an impairment to be severe can be corrected or viewed as harmless where the ALJ has found at least one of a claimant's alleged impairments to be severe because the claim survives step two screening, *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), and the ALJ must consider both severe and nonsevere impairments in the remaining steps of the disability determination analysis, *see* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); *see also McGlothin v. Comm'r,* 299 F. App'x 516, 522 (6th Cir. 2008) (finding it "legally irrelevant" that certain of plaintiff's impairments found not to be severe "since once any one impairment is found to be severe, the ALJ must consider both severe and nonsevere impairments in the subsequent steps."). In this case, because the ALJ found that Plaintiff Combs has some severe impairments, it is "legally irrelevant" that he did not also determine that her mental impairments were severe. *See McGlothin,* 299 F. App'x at 522.

Nevertheless, the ALJ's further consideration of what he concluded were Plaintiff's medically determinable but nonsevere mental impairments of depression and anxiety in the subsequent steps of the disability analysis, including Plaintiff's RFC determination, is problematic. Plaintiff contends that the combination of her physical and mental impairments impacts her ability to engage in work activities to such an extent that she is unable to work. However, the RFC as determined by the ALJ does not provide for any limitations based upon mental impairments. The ALJ acknowledged that in making an RFC finding, the law requires that he "consider all of the claimant's impairments, including impairments that are not severe" (A.R. 15) (*citing* 20 C.F.R. §§

14

404.1520(e), 404.1545, 416.920(e), and 416.945).  But in actually applying this standard in this case, the decision reflects virtually no detailed examination of whether limitations are warranted for Plaintiff's medically determinable mental impairments of depression and anxiety.  The RFC discussion in the decision is focused almost exclusively on Plaintiff's physical conditions and complaints and medical records for those physical impairments. (A.R. 20-22).  The ALJ expressly states that "The [RFC] determined in this decision is consistent with the overall medical evidence.  After careful consideration of the entire record, the undersigned finds no evidence to support a finding of total disability based on any *physical* impairment or combination thereof." (A.R. 20-21) (emphasis added).

The ALJ's discussion of any consideration to or impact of Plaintiff's mental impairments in assessing her RFC is limited to the following paragraph.

> Regarding the mental RFC, there is no assessment from any treating physician.  Dr. Spangler's opinion at Exhibit 15F is given negligible weight as he is a one-time examiner who mainly based his opinion on the claimant's subjective allegations.  His conclusions are inconsistent with other medical sources, namely Comp Care records where the claimant reports some problems initially but later says medications are helping, and she is doing better (Exhibit 14F).  As noted above, the evidence as a whole does not indicate work limitations are warranted.

(A.R. 22).  The ALJ included no nonexertional mental limitations in the RFC, so the ALJ's reference to giving Spangler's opinion "negligible weight" is unclear.  Moreover, the ALJ gave Spangler's opinion "negligible weight" on the basis that "he is a one-time examiner who mainly based his opinion on the claimant's subjective allegations." (A.R. 22).  But the record reflects otherwise.  Dr. Spangler's examination of Plaintiff consisted of administering several tests (WAIS-IV, WRAT-4 Blue Form, the Bender Visual Motor Gestalt Test), along with a mental status exam, his review of medical and mental health records, and his clinical interview of Plaintiff. (A.R. 562-65).  In addition,

15

the ALJ also says Spangler's opinions are inconsistent with the Comprehensive Care Center records that report Plaintiff had some problems initially but later said medications are helping and she is doing better. (A.R. 22).   However, Spangler's opinions are not actually inconsistent because Comprehensive Care Center did not offer any opinions about work limitations.  And just as the Care Center notes reflect that Plaintiff was doing better with medication, so too do certain of Dr. Spangler's opinions provide for a higher functioning ability rating, such as from "fair" to "good," with her medications.

The Commissioner, citing to *Smith v. Commissioner of Social Security,* 482 F.3d 873, 876 (6th Cir. 2007), correctly points out that an ALJ is only required to give reasons for rejecting the opinions of treating sources.  Dr. Spangler is not a treating source, and therefore the ALJ was not required to provide reasons for rejecting his opinions as he would a treating source under *Wilson v. Commissioner of Social Security*, 378 F.3d 541 (6th Cir. 2007).  However, the ALJ's decision must still be supported by substantial evidence.  Spangler, who was the only mental health professional of record to assess work restrictions based upon Plaintiff's mental impairments, does not provide substantial evidence to support the ALJ's decision.

The ALJ pointed to the opinions of the nonexamining agency reviewers to support his conclusion that work limitations due to Plaintiff's mental impairments were not warranted. (A.R. 18).  But as discussed above, the record was reviewed by Zenas English (A.R. 32), whom the Commissioner notes is not a licensed psychologist (R. 16, at 5 n.5).  And the record was also examined by clinical psychologist Edward Stodola, who in February 2012 opined that Plaintiff had no medically determinable mental impairment.  Although the ALJ points to Dr. Stodola's opinion, the ALJ also concluded based on the record that Plaintiff did in fact have medically determinable

16

mental impairments of depression and anxiety. (A.R. 18).  And Dr. Stodola did not have the opportunity to see and comment upon the opinions of and work restrictions assessed by Dr. Spangler, or the treatment records of Cumberland Comprehensive Care Center and Dr. Raza.  This information was not available at the time of Dr. Stodola's record review, and thus it is difficult to reconcile the ALJ's reference to and reliance upon Dr. Stodola's conclusions as providing substantial evidence. The regulations provide that "generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."  20 C.F.R. §§ 404.1527(d)(1), 916.1527(d)(1).  An ALJ may rely upon the opinion of a nonexaminer over that of an examining source when the nonexaminer clearly states the reasons for his differing opinion. *Barker v. Shalala,* 40 F.3d 789, 794 (6th Cir. 1994).  But here, Dr. Stodola did not have that opportunity to see and comment upon this mental impairment evidence, and his opinion therefore is not sufficient to offset that of the actual examining source.  Rather, the ALJ should have sought the advice of a medical professional who had the opportunity to see and comment upon the complete record.

One other point on this issue deserves comment.  The Commissioner argues that with respect to her alleged mental impairments, the Plaintiff has not satisfied the 12-month duration requirement. The regulations require that the alleged impairment "must have lasted or must be expected to last for a continuous period of at least 12 months" unless the impairment is expected to result in death. 20 C.F.R. §§ 404.1509, 416.909.  In this case, the ALJ did not note or discuss in his decision the durational requirement as it relates to Plaintiff's mental impairments.  The Commissioner's brief argues the duration requirement has not been satisfied, pointing out that Plaintiff complained of "nerves" in a February 2012 disability report she completed (A.R. 125, 127), first sought treatment

in May 2012 and the ALJ's decision was in November 2012.  However, a plaintiff is not required

to have suffered with an impairment for at least 12 months by the time of the ALJ's decision; the

regulation requires the impairment be "expected to last" for at least 12 months.  Dr. Spangler's report

states that Plaintiff needs to continue with mental health treatment for an extended period to exceed

12 months. (A.R. 566).  Thus, Plaintiff has offered evidence as to the duration requirement and this

issue was not addressed by the ALJ in his decision.  It would not serve to otherwise negate the need

for remand.

In summary, a remand of this claim for further consideration is required.  The ALJ's decision

should be reversed and the action remanded for further consideration of Plaintiff's mental

impairments.

### 3.    Plaintiff's "substantial evidence" argument.

Plaintiff argues generally that "there is not substantial evidence to support the denial of his

[sic] application for social security benefits."  (R. 15-1, at 18).  However, Plaintiff provides no

specific challenge, other than stating "[t]he objective medical evidence unequivocally documents that

the Plaintiff has several severe conditions which are disabling." (*Id.*).  No specific error by the ALJ

in his consideration of the objective medical evidence is identified and supportively argued by

Plaintiff.

Plaintiff's brief mistakenly refers to a "Ms. Vasquez" and review of this Court's social

security docket reveals that Plaintiff's counsel represented a Social Security claimant Vasquez in a

separate case in this district, *Vasquez v. Astrue,* No. 6:12-cv-125-KSF.  Plaintiff's argument in the

instant case is virtually identical to that raised by Plaintiff Vasquez in her case.  This argument

should be rejected and deemed waived in this case for the same reasons articulated in the District

Judge's decision in Plaintiff Vasquez's case. *See Vasquez v. Astrue,* 2013 WL 1498895, at *7 (E.D. Ky. Apr. 11, 2013) (wherein the District Judge, citing to *Hollon ex rel. Hollon v. Commissioner of Social Security,* 447 F.3d 477, 490-91 (6th Cir. 2006), reasoned that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed augmentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.").

## IV.   CONCLUSION AND RECOMMENDATION

As explained above, the ALJ's consideration of the evidence relating to Plaintiff's mental impairment renders the ALJ's decision not supported by substantial evidence and necessitates remand.

Accordingly, **IT IS RECOMMENDED** that:

1.     Defendant's Motion for Summary Judgment (R. 16) be **denied;**

2.     Plaintiff's Motion for Summary Judgment (R. 15) be **granted in part** as to Plaintiff's request for a reversal of the Commissioner's decision and remand, and **denied in part** to the extent Plaintiff requests a court-ordered award of benefits; and,

3.     that judgment be entered **reversing** the Decision and **remanding** the matter under sentence four of 42 U.S.C. § 405(g), with instructions to the ALJ to reconsider the Plaintiff's allegations of mental impairments and the impact of any medically determinable mental impairments at each of the sequential steps of the disability analysis.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days of the date of service or further appeal is waived. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn,*

728 F.2d 813, 815 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985). A party may file a response to another party's objections within fourteen (14) days after being served with a copy. *See* Fed. R. Civ. P. 72(b).

Dated this 18th day of February, 2015.



**Signed By:**

***Candace J. Smith***

**United States Magistrate Judge**

G:\DATA\social security\13-197 Combs R&R.cjs.wpd

20